UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LISA E. HUGHES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:07-cv-81-WTL-TAB |
| ) | |
| INDIANAPOLIS RADIO LICENSE CO., ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON MOTIONS IN LIMINE

This cause is before the Court on motions in limine filed by both parties and the responses thereto. The Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** each motion as set forth below.

### Plaintiff's Motion in Limine

The Plaintiff's motion in limine raises three issues. First, she seeks an order barring the introduction into evidence of the Equal Employment Opportunity Commission's Dismissal and Notice of Rights Letter and testimony regarding the contents or import of that letter. The motion is **GRANTED** as to this issue. It appears that the EEOC did not issue a report of any kind, but rather simply sent Plaintiff its standard check-a-box right-to-sue letter. Because there is absolutely no way of knowing how thorough the EEOC's investigation was or what evidence it considered in arriving at its determination, the potential for the jury to place undue emphasis on the EEOC's finding, thus prejudicing the Plaintiff, far outweighs the relevance of the EEOC's conclusory determination. Therefore, while the letter and testimony regarding the EEOC's finding likely does fall under the hearsay exception found in Federal Rule of Evidence 803(8)(C), the Court determines that it nonetheless should be excluded pursuant to Federal Rule

of Evidence 403.  None of the cases cited by the Defendant dictate a contrary ruling.  *See Tulloss v. Near North Montessori School, Inc.*, 776 F.2d 150, 154 (7th Cir. 1985) (finding no abuse of discretion in court's refusal to admit EEOC's determination of reasonable cause and entire investigatory file); *Young v. James Green Management, Inc.*, 327 F.3d 616, 624 (7th Cir. 2003) (same); *LaDolce v. Bank Admin. Institute*, 585 F. Supp. 975, 977 (D.C. Ill. 1984) (admitting evidence of proceedings and findings by EEOC, but noting that the decision whether to do so is discretionary).

Next, the Plaintiff seeks to exclude evidence regarding any alleged deficiencies in the Plaintiff's performance other than her failure to meet minimum billing requirements, such as attendance issues.  This motion is **DENIED**.  While it is true that the Defendant asserts the Plaintiff was terminated because of her failure to meet her billing requirements, the Plaintiff's position is that her failure was caused by the actions of her supervisor.  The Defendant thus is entitled to introduce evidence regarding the Plaintiff's overall job performance, because all aspects of her job performance are relevant to the factual question of why she failed to sell enough advertising.

Finally, the Plaintiff asks the Court to bar evidence that she did not make a complaint of race discrimination during her employment with the Defendant.  Because her claim is only that she was discriminatorily discharged, she had no legal obligation to make any complaint prior to her discharge; therefore, she argues, the fact that she did not do so is irrelevant.  The Court disagrees that it is entirely irrelevant.  The Plaintiff will testify regarding various events that occurred during her employment that she believed evidenced the racial bias of her supervisor.  She will also testify that she believed she was treated differently than other employees and was

2

subjected to different standards because of her race.  The fact that she did not complain to anyone about this discrimination while it was happening is relevant to her credibility regarding her view of the incidents and treatment in question.  The Plaintiff will be able to testify regarding her reasons for choosing not to complain, and the jury will be able to weigh that testimony in arriving at its credibility determination.

The Plaintiff also argues that any relevance is outweighed by the potential prejudice from the jury believing that she had a legal obligation to complain and failed to fulfill that obligation.  The Court does not believe the jury will be so confused, and therefore **DENIES** the motion in limine regarding this issue.  However, the Court would entertain a request for a final instruction that informs the jury that no such legal obligation existed.

## Defendant's Motions in Limine

The Defendant's motion in limine raises numerous issues, each of which is addressed in turn below.

### *Testimony Regarding Other Allegations of Discrimination*

The Defendant argues that any evidence regarding other allegations of employment discrimination against it is irrelevant and should be excluded.  The Defendant's argument goes too far, as even the case cited by the Defendant, *Manuel v. City of Chicago*, 335 F.3d 592, 596 (7th Cir. 2003), so indicates:

> Other-acts evidence may be relevant and admissible in a discrimination case to prove, for example, intent or pretext. *See* Fed. R. Evid. 404(b); see also Vance v. S. Bell Tel. & Tel. Co., 863 F.2d 1503, 1511 n. 5 (11th Cir.1989) ("The discriminatory intent element can be proven by direct or circumstantial evidence. . . . Thus, the jury properly could have considered evidence of discriminatory acts . . . directed at employees other than the plaintiff, as tending to show the existence of racial animus in the present case." (quotation omitted)).

However, as *Manuel* also instructs, the Court must conduct an analysis pursuant to Federal Rule of Evidence 403 to determine whether any particular evidence regarding another allegation of discrimination should be admitted.  The more similar the circumstances alleged are to the Plaintiff's allegations, the more relevant the evidence will be and thus the more likely it is that it will be admitted. Therefore, the Defendant's motion in limine is **GRANTED** on this issue, but only to the extent that the Plaintiff shall make an offer to prove outside of the presence of the jury before offering any testimony regarding or otherwise alluding to other allegations of discrimination against the Defendant, so that the Court may conduct the necessary Rule 403 analysis.

*Testimony Regarding the Racial Composition of the Defendant's Workforce*

The Defendant is correct that evidence regarding the number or percentage of minorities in the Defendant's workforce, without more, is inadmissible.  Without the information necessary to put those numbers into context–for example, evidence regarding the available applicants and their qualifications or the racial composition of the relevant workforce as a whole–the numbers are essentially meaningless.  Accordingly, the motion in limine is **GRANTED** as to this issue. That said, however, this ruling does not preclude the Plaintiff from introducing evidence that she was the only African-American salesperson who had worked for Drew Medland (if, in fact, that is the case, as was suggested at the summary judgment stage), because that fact would be relevant to the Plaintiff's theory that Medland believed an African-American salesperson could not be successful at his radio station due to the demographics of the station's listeners.

*Hearsay Objections*

The Defendant anticipates certain testimony by the Plaintiff and argues that that testimony is inadmissible hearsay.  First, the Plaintiff intends to testify that shortly after she

began working for the Defendant, Sales Manager Tim Burns made the following statement to her: "I told Drew [Medland] that he needed to hire you, or I would." This statement would be offered by the Plaintiff as evidence that Medland did not choose to hire the Plaintiff, but rather was directed to do so by Burns. The Plaintiff argues that the statement falls under the hearsay exception in Federal Rule of Evidence 801(d), which provides that a statement is not hearsay if it is offered against a party and was made by the party's employee concerning a matter within the scope of the employment during the existence of the employment relationship. A statement is about a matter "within the scope of the employment" if "the subject matter of the admission match[es] the subject matter of the employee's job description." *Aliotta v. National R.R. Passenger Corp.*, 315 F.3d 756, 762 (7th Cir. 2003).

     Given the information before the Court at this time, it does not appear that this statement was made within the scope of Burns's employment. Indeed, rather than an "admission," the statement seems more like an off-hand comment meant to encourage a new employee. This is not to say that the Plaintiff will not be able to lay the requisite foundation at trial, however. If the Plaintiff can show that hiring account managers and/or directing Medland's hiring decisions was within the scope of Burns's job description, then the statement will be admissible under Rule 801(d)(2). However, the motion in limine is **GRANTED** as to this statement at this time; if the Plaintiff wishes to attempt to make the requisite showing, she must do so outside the presence of the jury.

     The next statement at issue is a statement by one of the Plaintiff"s potential customers following a meeting with Plaintiff and Medland to the effect of "that man has a problem." The Court determines that this statement is not hearsay, in that it is not being offered for the truth of the matter asserted–that Medland "had a problem"–but rather is being offered to show that the

5

customer's perception was that Medland had a problem, or, in other words, that Medland had made a negative impression on him. Therefore, the motion in limine is **DENIED** as to this statement. However, the Plaintiff is cautioned that while she may testify regarding that statement, that does not mean that she will be permitted to speculate regarding whether the customer's negative impression of Medland was the reason he did not purchase advertising.

The Defendant's next issue is similar–it seeks an order barring testimony regarding a statement to the Plaintiff by the Plaintiff's contact at another potential advertiser that it cancelled its advertising order because of the way its employee was treated by Medland. The Plaintiff argues that this statement is admissible under Federal Rule of Evidence 803(1).

> Under Rule 803(1), hearsay is admissible as a present sense impression if the "statement describing or explaining an event or condition [was] made while the declarant was perceiving the event or condition, or immediately thereafter." There are three criteria for the admission of statements under Rule 803(1): "(1) the statement must describe an event or condition without calculated narration; (2) the speaker must have personally perceived the event or condition described; and (3) the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter." *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001). "A declarant who deliberates about what to say or provides statements for a particular reason creates the possibility that the statements are not contemporaneous, and, more likely, are calculated interpretations of events rather than near simultaneous perceptions." *United States v. Woods*, 301 F.3d 556, 562 (7th Cir.2002).

*Schindler v. Seiler*, 474 F.3d 1008, 1011 (7th Cir. 2007). The Plaintiff asserts that the statement in question was made "shortly after the cancellation and . . . was offered by the account contact to explain that event." "Shortly" is not the same as "immediately," however. This is not simply parsing words; the hearsay exception applies when a statement is made during or immediately after an event, before the declarant has had a chance to figure out how he wants to describe or explain the event. In this case, the Plaintiff's contact either called the Plaintiff to explain the decision not to purchase advertising–in which case he or she clearly had the opportunity to decide

6

in advance what to say–or responded to the Plaintiff's inquiry sometime (not immediately) after the fact.  Rule 803(1) does not apply.

The Plaintiff also argues that the statement is admissible under Federal Rule of Evidence 803(3) as a statement of the declarant's motive for cancelling the order.  This argument fails for the same reason.  "Fed.R.Evid. 803(3) excludes from the hearsay rule '[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed.'"  *U.S. v. Jackson*, 780 F.2d 1305, 1315 (7th Cir. 1986).

> In determining whether statements relative to the declarant's state of mind are admissible under Fed.R.Evid. 803(3), three requirements must be satisfied: (1) the statements must be contemporaneous with the event sought to be proven; (2) it must be shown that the declarant had no chance to reflect-that is, no time to fabricate or to misrepresent his thoughts; and (3) the statements must be shown to be relevant to an issue in the case.  *See* Advisory Committee Note to Fed.R.Evid. 803 (noting that state of mind exception to the hearsay rule "is essentially a specialized application" of the present sense impression exception, Fed.R.Evid. 803(1), which is based upon the theory "that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.").

*Jackson*, 780 F.2d at 1315 (additional citations and internal quotation marks omitted).  Again, the lack of spontaneity of the statement at issue precludes the application of the hearsay exception.  *See, e.g., U.S. v. Carter*, 910 F.2d 1524, 1530 (7th Cir. 1990) (statement about motive for confessing made one hour after confession did not fall under exception because declarant had had ample time to reflect upon his situation).  Therefore, the motion in limine is **GRANTED** as to this statement.

This same ruling applies to any testimony regarding similar statements by other potential advertisers regarding their reasons for not purchasing advertising.  However, other statements by potential advertisers–for example, statements regarding their advertising needs or their intentions

7

to purchase advertising–may be admissible not for the truth of the matters asserted in the statements, but rather to show the reasons why the Plaintiff took certain actions vis-a-vis those accounts; for example, they may be admitted to show why she spent time pursuing a particular account.

Next, the Defendant argues that the Plaintiff should not be permitted to testify about remarks made by veteran account manager Kathy Parson as she reviewed the account list of the Plaintiff and that of another new account manager, Johanna Guyton. It does not appear to the Court the statements–"I quit" and "not bad for a rookie"–are being offered for their truth; clearly Parson was not actually quitting. Assuming that they are, however, the statements were made contemporaneously with Parson's review of the account lists and expressed her immediate reaction to them. Accordingly, they fall under Rule 803(3), and the motion therefore is **DENIED** as to these statements.

The Defendant next argues that the Plaintiff should not be permitted to testify regarding statements made to her by Parson and another account manager, Karie Toney, after they read letters that the Plaintiff had received from Medland. Unlike Parson's reaction to the account lists, these statements do not appear to be in the nature of spontaneous reactions to the letters, but rather their considered opinions that they had never seen any similar letters in the past. In other words, the testimony at issue would be more like recounting a thoughtful conversation rather than simply repeating a spontaneous reaction. Therefore, Court does not believe that the statements fall under either Rule 803(1) or 803(3), and the motion in limine is **GRANTED** with regard to them.

Next, the Defendant moves to exclude as double hearsay the Plaintiff's anticipated testimony that Guyton told her that Medland had told Guyton to pursue an account that the Plaintiff already had been pursuing. The motion is **DENIED** on this issue, inasmuch as the

statement in question will be admitted for the purpose of explaining why the Plaintiff took certain actions–in essence going to Medland to have the account assigned to her instead of Guyton–rather than for the truth of the matter stated.

*Testimony Regarding the Plaintiff's Lost Accounts*

The Plaintiff wishes to testify and offer a demonstrative exhibit regarding advertising accounts that she alleges she lost because of Medland's behavior, including the dollar amounts that she believes those accounts would have been worth. The Defendant correctly argues that any such testimony would be purely speculative, at least absent unequivocal testimony by the potential advertisers that they would have purchased that amount in advertising but for Medland. The Plaintiff may testify about Medland's behavior that she witnessed and how it effected her ability to work with potential advertisers, and she also may testify about her sales efforts, including her pitches and the dollar amounts that were in those pitches, but she may not testify that but for Medland's behavior those pitches would have been successful, because that would be pure speculation. Accordingly, the motion in limine is **GRANTED** as to this issue.

*Testimony Regarding the Treatment of Other Employees*

The Defendant next argues that the Plaintiff should be precluded from testifying regarding its treatment of its non-African-American employees because none of those employees was sufficiently similarly situated to the Plaintiff. The Plaintiff counters that Guyton was similarly-situated to her in that they were both new and inexperienced account managers who reported to Medland. The Court agrees. The Defendant argues that the two were not similarly-situated because Guyton's overall performance was superior to the Plaintiff's. This argument conflates the similarly-situated requirement under the *McDonnell Douglas* construct, which permits a plaintiff to use the "indirect method" to establish a prima facie case during the summary judgment

process,[1] with the real issue here. In this case the Plaintiff alleges that Medland treated her less favorably than Guyton because of race and that it was that discriminatory treatment that caused her poor performance, giving Medland an excuse to terminate her. Under this theory, which the Plaintiff is entitled to pursue, evidence that, e.g., Medland interfered with the Plaintiff's attempts at making sales and did not so interfere with Guyton, or that Medland gave Guyton better account prospects than he gave the Plaintiff, clearly is relevant. Accordingly, the motion in limine is **DENIED** as to this issue with regard to Guyton. However, to the extent that the Plaintiff intends to offer evidence regarding the treatment of any other employee by the Defendant, the motion is **GRANTED**. This does not mean that any such evidence necessarily is irrelevant and thus inadmissible; it simply means that the Plaintiff must make an offer to prove outside of the presence of the jury before offering any such testimony or evidence, because there is nothing before the Court at this time to demonstrate that the treatment of any other employee is relevant to the Plaintiff's theory of the case.

The Defendant also raises the issue of the relevant time frame for evidence regarding its treatment of other employees. The Defendant's position is that how it treated its account managers, and in particular Guyton, after the Plaintiff was terminated is irrelevant. The Court disagrees. The Plaintiff worked for the Defendant for approximately eight months; the Court finds

---

[1]Essentially the Defendant, relying upon *Brummett v. Sinclair Broadcast Group, Inc.,* 414 F.3d 686 (7th Cir. 2005), argues that Guyton's better performance distinguishes her from the Plaintiff, thus rendering her an invalid comparator under the *McDonnell Douglas* formula, under which the Plaintiff would have to demonstrate that she was fired and a similarly-situated employee outside of the protected class was not. However, *Brummett* involved the granting of a summary judgment motion; the *McDonnell-Douglas* framework is irrelevant at trial. *See Brewer v. Board of Trustees of University of IL,* 479 F.3d 908, 915-16 (7th Cir. 2007) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993)) (holding that once a defendant comes forward with a nondiscriminatory reason for the adverse employment action at issue, the *McDonnell-Douglas* framework "simply drops out of the picture").

it reasonable to compare how she was treated during those eight months–in other words, the type of help and support she received as a new account manager and the Defendant's expectations regarding her performance during that time–with Guyton's experience during a similar time period.  Accordingly, the Plaintiff may offer evidence regarding the Defendant's treatment of Guyton for the first eight months or so of Guyton's employment with the Defendant, even though that extends the time period to a date after the date of the Plaintiff's termination.

*Testimony that the Plaintiff Visited Planned Parenthood*

The Defendant objects to the Plaintiff's anticipated testimony that she had to use Planned Parenthood as a healthcare provider after she was terminated because she could not afford to visit her regular doctor.  The Defendant's objection is based upon its fear that the jury will infer that the Plaintiff was forced to have an abortion because she lost her job, even though the Plaintiff's testimony clearly indicates that she visited Planned Parenthood for routine health services, not an abortion.  The Court does not believe that the Defendant has shown that Planned Parenthood is so exclusively associated with abortion–in light of the myriad of other healthcare services that it provides–that the jury would draw such an inference.  However, the Plaintiff has agreed not to refer to Planned Parenthood by name, and instead to testify that she visited a free women's health clinic, which renders the Defendant's motion as to this issue moot.

*The Plaintiff's Diary*

Finally, the Defendant seeks an order barring the Plaintiff from introducing as an exhibit a diary that she kept during her course of her employment with the Defendant.  The Plaintiff argues that the diary is admissible under Federal Rule of Evidence 803(1) because it was "a statement describing or explaining an event or condition while the declarant was perceiving the event or condition, or immediately thereafter."  While it is theoretically possible that the Plaintiff could

11

demonstrate that her diary was written under such circumstances as to satisfy the requirements of Rule 803(1), which are discussed at length above–and the Plaintiff certainly may try to do so outside of the presence of the jury–it is highly unlikely. Simply put, the Plaintiff had the opportunity to write down whatever she wanted to when she made her diary entries; they were not spontaneous utterances, but rather the rendition of events that she chose to put down on paper. *Cf. U.S. v. Santos*, 201 F.3d 953, 964 (7th Cir. 2000) (exception did not apply to handwritten note that "may have been intended as a reflective summary and characterization of . . . conduct rather than a spontaneous reaction to an immediate sensation"); *Lust v. Sealy, Inc.*, 383 F.3d 580, 588 (7th Cir. 2004) ("There is no more facile a method of creating favorable evidence than writing a self-exculpatory note. Such notes have no warrants of reliability and allowing them to be placed in evidence would operate merely as a subsidy to the forest-products industry.").

      The Plaintiff also argues that the diary should be read into evidence as a past recollection recorded pursuant to Federal Rule of Evidence 803(5).

> For a diary to be admissible under Rule 803(5)[2], the party seeking to admit the document must establish 1) that the record concerns a matter about which the witness once had knowledge but now has insufficient recollection to testify fully and accurately; and 2) that the witness made or adopted the record when the matter was fresh in the witness's memory and the record reflects that knowledge correctly.

*Collins v. Kibort,* 143 F.3d 331, 338 (7th Cir. 1998). This rule will come into play only if the Plaintiff is unable to recall the answer to a particular question and wishes to use her diary to

---

[2]Rule 803(5) provides: "Recorded Recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

refresh her recollection; obviously only the portion of the diary relating to the particular question would be read into evidence, and the diary would not be admitted as an exhibit.

 Finally, the Plaintiff argues that if the Defendant chooses to admit into evidence an excerpt from her diary then she should be permitted to introduce the diary in its entirety pursuant to Federal Rule of Evidence 106. This reading of Rule 106 is far too expansive. The rule provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." "[U]nder the doctrine of completeness, codified in Federal Rule of Evidence 106, a party against whom a 'fragmentary statement' is introduced may ask the district court to admit other parts of the statement necessary to 'clarify or explain the portion already received.'" *U.S. v. Price*, 516 F.3d 597, 604 (7th Cir. 2008).

 In this case, the Defendant intends to introduce the following redacted excerpt from a diary entry from July 2005:

> Received another minimum goal letter asked me what I think I would be good @ meaning career wise, told me he'd be a reference, told me he did not believe I could or would reach goals, new July goal went from $10K – 18K. I [illegible word] accomplished 14,000T. He told me during a infield day … asked me if I though the problem was me as a seller or selling the Song, he said for new seller, selling the format was difficult cause it was so niche, its not an easy sell. He tells me in every meeting we have, Lisa what is it that you want to do, or should be [illegible word] of this, because we can't keep you here at Susquehana, you aren't making the minimum, he says its possible you can't do it, I can't see at based in your performance, the Song is not an easy sell for new selling, keep me posted. He constantly reminds me of termination.

The Plaintiff argues that at a minimum she should be permitted to introduce the remainder of that particular diary entry. The Court agrees that it is not appropriate for the Defendant to redact the words "that his friend @ MOJO FM in Cincinnati needed new acct reps, said they 'help' each

13

other out," from the diary entry, as that statement is directly related to the subject matter of the remainder of the excerpt–that Medland told the Plaintiff that he did not think she could succeed as a salesperson at his particular radio station.  However, it is not unfair to leave out the remainder of the redacted portion, which relates to a different topic altogether, a conversation the Plaintiff had with Nancy Ochoa.  Accordingly, the motion in limine is **GRANTED IN PART AND DENIED IN PART** with regard to the Plaintiff's diary.  If the Defendant decides to introduce the excerpt from the July 2005 diary entry, it shall include the language quoted above.

SO ORDERED:   01/30/2009

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Laurie E. Martin
HOOVER HULL LLP
lmartin@hooverhull.com